**SKIL CORPORATION,**
**Plaintiff-Appellant,**

v.

**MILLERS FALLS COMPANY et al.,**
**Defendants-Appellees.**

No. 75–2291.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1976.

Decided Aug. 26, 1976.

Certiorari Denied by Supreme Court
Dec. 13, 1976.
See 97 S.Ct. 653.

Clarence J. Fleming, McDougal, Hersh & Scott, Chicago, Ill., Marc L. Swartzbaugh, Cleveland, Ohio, Charles M. Carter, Chicago, Ill., for plaintiff-appellant.

Richard J. Egan, Baldwin, Egan, Walling & Fetzer, M. Reese Dill, Merkel, Campbell, Dill & Zetzer, Cleveland, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, and WEICK and ADAMS,* Circuit Judges.

WEICK, Circuit Judge.

This is an interlocutory appeal from an order of the United States District Court for the Northern District of Ohio denying a motion by Skil Corporation (Skil) to remand a patent infringement action to the District Court in Northern Illinois, which had previously transferred the case to the Ohio Court under the provisions of 28 U.S.C. § 1404(a).

The transferred case is one of several which have been filed during protracted litigation between Skil and Lucerne Products, Inc. (Lucerne), who are the patentees and manufacturers of competing switches used on portable electric tools. This litigation has been pending in various courts since 1968, with cases filed not only in Ohio and Illinois, but also in the Southern District of New York and the District of Connecticut.

Over the years cases have shuttled between the District Courts of Northern Ohio and Illinois by transfer and retransfer in a controversy over choice of forum, with the result that there has been no trial on the merits of the litigation. Various phases of the transfer litigation have been considered by District Judges Green and Lambros of Ohio, and by Judges Will and Hoffman of Illinois. This is the fourth appeal which our court has entertained.[1]

The history of the litigation is detailed in Judge Hoffman's transfer order, a copy of which is appended hereto as Exhibit "A".

---

* The Honorable Arlin M. Adams, Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. *Lucerne Products, Inc. v. Skil Corp.*, 441 F.2d 1127 (6th Cir. 1971); *Skil Corp. v. Lucerne Products, Inc.*, No. 72–1282; *Skil Corp. v. Lucerne Products, Inc.*, No. 73–1738.

Skil filed this particular action in the Northern District of Illinois against several of Lucerne's customers. Lucerne had indemnified its customers, and was permitted to intervene as a defendant. Skill was also plaintiff in an action against Lucerne then pending in the Northern District of Ohio, No. C 69–461, which raised the same issues of patent validity. Judge Hoffman sua sponte ordered this action transferred to the Northern District of Ohio so that it could be consolidated with Skil's action against Lucerne.

Upon the entry of the transfer order Skil filed an Emergency Petition for a Writ of Mandamus and Prohibition in the Court of Appeals for the Seventh Circuit, seeking to vacate Judge Hoffman's order. The basis of the attack was that the record did not show that the transferee court had proper venue as to each defendant, that one of the defendants did not have a principal place of business in Northern Ohio, and that therefore Judge Hoffman was without power to order the transfer under § 1404(a). The petition with a brief and attachments thereto consisted of 123 pages, and a supplemental appendix was filed. Lucerne filed an 80-page response.

Circuit Judges Kiley, Stevens and Sprecher considered the merits of the case, as evidenced by the following order entered on December 26, 1973:

This matter is before the court on the filing by each party of a communication, as required by this court's order of September 6, 1973, advising the court of the disposition of the appeal in No. 73–1738 docketed in the United States Court of Appeals for the Sixth Circuit. On consideration of the plaintiff's emergency petition for writ of prohibition and mandamus, memorandum in support thereof, and supplemental appendix filed August 2, 1973 and of joint answer of respondents filed August 22, 1973,

It is ordered that said petition be, and the same is hereby DENIED. (App. I at 255)

The Seventh Circuit denied Skil's petition for rehearing and another petition for rehearing en banc; it denied Skil's motion for a stay pending certiorari to the Supreme Court. Mr. Justice Rehnquist denied a similar motion for a stay.

Following the entry of the transfer order of Judge Hoffman and the decision of the Seventh Circuit, District Judge Lambros of Northern Ohio entered an order vacating his own previous remand order in *Skil v. Lucerne*, No. C 69–461, and consolidated that case with the case being transferred from Northern Illinois, No. C 74–121, for all pretrial proceedings. A copy of the Order is appended hereto as Exhibit "B".

Skil then moved to remand Case No. C 74–121 again to Illinois, which motion was denied. Judge Lambros certified the case for an interlocutory appeal, which was granted by a panel of this Court.

Skil contends that Judge Lambros erred in failing to remand this case to the Northern District of Illinois, since the Illinois District Court lacked the power to transfer the case to the Northern District of Ohio. Skil relies upon the case of *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), a decision by a divided court, which held that a § 1404(a) transfer can only be made to a District Court in which the plaintiff could have originally brought the action while complying with the venue and service of process statutes. Skil argues that the record does not show that the Northern District of Ohio is a proper venue as to all defendants, and therefore the Illinois District Court lacked the power under § 1404(a) to transfer the case to the Northern District of Ohio.

■ This is precisely the very same issue that the Seventh Circuit considered and decided against Skil in the mandamus and prohibition action brought in that Court by Skil to set aside this transfer. It is thus clear that the decision of the Seventh Circuit against Skil is res judicata on the issue of the validity of Judge Hoffman's order of transfer, and we are bound by the decision. In denying the writ, the Seventh Circuit did not base its decision on the ground that

mandamus and prohibition were not the appropriate remedies. The order entered by the Seventh Circuit does not permit any such narrow construction.

Skil argues that we must apply the rule of *Blaski* in spite of the Seventh Circuit's decision, because in that case the Supreme Court affirmed a remand order of the Seventh Circuit in spite of the fact that a mandamus action to prevent the transfer had been unsuccessful in the Fifth Circuit. In *Blaski*, the Fifth Circuit's action was held not res judicata as to the merits of the transfer because the Fifth Circuit never reached the merits. The party opposing the transfer had merely moved for leave to file a petition for a writ of mandamus, and the Fifth Circuit denied the motion.[2] Here, Skil filed a petition, the Seventh Circuit considered the merits of the petition and denied relief after reviewing the petition, the memorandum in support thereof, the supplemental appendix and the joint answer of the respondents.

[2–4] A further contention of Skil is that the Seventh Circuit's denial of a writ of mandamus and prohibition is not binding on this Court because the standard of review in a mandamus action differs from the standard of review in an interlocutory appeal. This distinction does not change the result in this case. Skil argued in the Seventh Circuit that Judge Hoffman lacked power to transfer the case because of *Blaski*. Had Skil been correct, the Seventh Circuit would have been required to issue the writ. By denying the writ, the Seventh Circuit must necessarily have decided that Judge Hoffman had power to transfer the case because the District Court in Ohio could properly exercise jurisdiction over the action. The standard for testing jurisdiction does not differ in a mandamus action from the standard used in an appeal.[3] The Seventh Circuit would not have refused to issue the writ had Judge Hoffman lacked power to transfer the case. We should never assume that a court of concurrent jurisdiction neglected to perform its duty, particularly when its order clearly shows full performance. Mandamus is the proper remedy when a transfer has been ordered in violation of the legal limitations of § 1404(a). *Van Dusen v. Barrack*, 376 U.S. 612, 615 n. 3, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *Johnson & Johnson v. Picard*, 282 F.2d 386 (6th Cir. 1960).[4]

**2.** Skil first represented to this Court that the plaintiff in *Blaski* filed a petition for writ of mandamus in the Fifth Circuit, which denied the petition (Skil brief at 20). According to the facts as stated by the Supreme Court (363 U.S. at 337, 80 S.Ct. 1084) no such petition was filed because leave to file was denied. Skil belatedly recognized this distinction in its reply brief (at page 5, note 4), but argued that the distinction is immaterial.

**3.** The dissent asserts that mandamus is an extraordinary remedy used only in drastic situations to prevent judicial usurpation of power. Surely this does not mean that a Court in a mandamus proceeding can remedy only egregious jurisdictional violations while overlooking more mundane usurpations of power. Even in emphasizing the extraordinary nature of mandamus, the Supreme Court in *Kerr v. United States District Court*, —— U.S. ——, ——, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976), noted that mandamus was to be " 'used to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so' " [citations omitted]. The Court also noted that "we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction'."

Although the power of a court to transfer a case under § 1404(a) hinges upon venue statutes, we do not consider the problem to be one of venue, but rather one of jurisdiction of the transferee court to hear the transferred case. As stated in *Blaski*: "The transferee courts could have acquired jurisdiction over these actions only if properly brought in those courts, or if validly transferred thereto under § 1404(a)." (363 U.S. at 343, 80 S.Ct. at 1089.) The Seventh Circuit was required, in ruling on the mandamus petition, to consider whether the transferor court usurped its power and whether the transferee court could properly acquire jurisdiction.

**4.** See also the recent decision of the Supreme Court in *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), wherein the Court held that mandamus was the proper method of attacking a remand order of a case removed from a state court by a District Court for reasons not authorized by the removal statutes.

Finally, Skil contends that this Court cannot consider the Seventh Circuit's order as res judicata because to do so would conflict with some curious dictum[5] found in *Blaski*, 363 U.S. at 340 n. 9, 80 S.Ct. 1084. The Court listed three reasons why the Fifth Circuit's order was not res judicata:

1.  The Fifth Circuit's order was interlocutory;
2.  Not on the merits;  and
3.  entered in the same case as the Seventh Circuit's decision in *Blaski*.

■    While it would be improper for us to question the applicability of those reasons to the facts in *Blaski*, we must conclude that those reasons are inapplicable to the facts before us.  A proceeding upon a petition for a writ of mandamus is a separate action, not an appeal in Skil's lawsuit. Therefore, the Seventh Circuit's order was not interlocutory, but a final disposition, challengeable only by writ of certiorari in the Supreme Court, which Skil did not seek. Furthermore, the Seventh Circuit must necessarily have decided the power-of-transfer issue on the merits, as explained above. Finally, the Seventh Circuit's order was not issued in the case before us, but was issued in a separate action, *Skil Corp. v. Hoffman*, No. 73–1697.  Thus none of the reasons for denying the effect of res judicata in *Blaski* are present here.

■    Alternatively, the order of the Seventh Circuit in refusing to set aside by mandamus the transfer order had the effect of establishing the validity of the transfer order as the law of the case.[6]  As Professor Moore states:

> [S]uppose the district court orders a transfer of the action.  If this order is then reviewed by an appellate court on the merits, sustained, and the transfer accordingly effected, the transferee-dis-

trict court should accept the ruling as the law of the case for it, and there should be no further transfer except under the most impelling and unusual circumstances.  (1V  J.  Moore,  Federal  Practice ¶ 0.404(8) at 531–32 (2d ed. 1974) [footnotes omitted])

Under the law-of-the-case analysis, we need not find that reconsideration of the Seventh Circuit's decision is beyond our power, but we need only consider whether it "would .  .  .  [be] wise to apply the law-of-the-case doctrine as a sound rule of practice." *Id.* at 534.

> [The] law of the case is a sufficiently flexible doctrine that it permits departure where clearly warranted.  But in the main there should be adherence to the prior ruling, for it is important that the type of issue involved be not subject to perpetual litigation.  (Id. at 532 n. 9)

When three federal courts, one having coordinate jurisdiction with this Court, have considered and rejected the same objection to transfer raised by Skil, we see no reason to avoid applying law-of-the-case doctrine as a sound rule of practice.  While we might be willing to depart from applying law-of-the-case if one of the defendants was objecting to transfer because there exists no proper venue as to him in the transferee district, we do not have such a case before us.  Skil was already before the Court in Northern Ohio as a party in another case raising the same issues of patent validity, which case has been consolidated with the transferred case.  Lucerne had agreed to indemnify its customers who were the original defendants in the transferred action.  Thus Lucerne is in reality the sole target of Skil's attack on the patent in both lawsuits.  We see no reason to avoid applying the law-of-the-case doctrine, thereby allowing Skil to litigate the validity

---

**5.**  The question whether the Fifth Circuit's order denying a motion for leave to file a petition for writ of mandamus was a binding determination of the transferee court's jurisdiction was not at issue in that case: "No claim is made here that the order of the Fifth Circuit denying the motion of respondents in the *Blaski* case for leave to file a petition for writ of mandamus, 245

F.2d 737, precluded Judge Hoffman or the Seventh Circuit from remanding that case."  363 U.S. at 340, 80 S.Ct. at 1088.

**6.**  It is the transfer order itself, approved by the Seventh Circuit's order, which becomes the law of the case.

of the patent in two different courts simultaneously.[7] We also note that the outcome of this case on the merits will not depend upon the transfer question nor will Skil be prejudiced by the transfer.

The aim of our system of jurisprudence is to settle the merits of a dispute with reasonable dispatch. The doctrine of the law-of-the-case has developed to achieve that end.

> [I]f litigation is not terminated within a reasonable time there is a denial of justice; efficient dispatch of court business in a manner fairly approximating "justice" is sometimes better than a tardy disposition that may approximate more nearly some theoretical ideal. (*Id.* ¶ 0.404[1] at 409)

The legislative history of § 1404(a), found in the Reviser's Notes, states that the section "was drafted in accordance with the doctrine of forum non conveniens." It was never intended to afford a vehicle in patent litigation to shuttle cases involving the same patents between District Courts in different Circuits, resulting in a battle over the choice of forum, and delaying indefinitely a trial on the merits. The present litigation has resulted in unreasonable delay in reaching the merits of the patent dispute. The two cases which have been consolidated by District Judge Lambros, and remain ripe for resolution, were filed originally in Illinois on (respectively) July 11, 1968 (No. 68–C–1290) and November 16, 1970 (No. 70–C–2858). Judge Lambros was correct in describing the situation as "chaotic"; and the time has certainly come to

bring order to this situation by adjudicating issues which have shuffled between the Illinois and Ohio District Courts for eight years. We should put a stop to forum-shopping and bring to a close this protracted litigation over the forum.

The order of the District Court is affirmed.

EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CIVIL ACTION No. 72 C 2854

SKIL CORPORATION,
Plaintiff,

v.

MILLERS FALLS COMPANY,
ROCKWELL MANUFACTURING COMPANY and
WEN PRODUCTS, INC.,
Defendants,

LUCERNE PRODUCTS, INC.,
Intervenor.

ORDER

The above matter came before the Court on July 30, 1973 on the "Motion of Skil Corporation under Rule 21, Federal Rules of Civil Procedure, to add Mr. Benjamin H. Matthews as a Party-Defendant" and upon the briefs and memoranda filed by the parties in connection therewith and it further appearing to the Court that the following facts and circumstances, constituting a matter of record before this Court, are of significance to the determination of such Motion:

> Ohio, we see no good purpose to be served in permitting Skil to continue forum-shopping by searching for and suing Lucerne's customers in the hope that one of them could not be brought to Northern Ohio, thereby gaining another forum, in which expedited proceedings could be sought if the proceedings in Northern Ohio appeared unpromising. Although Skil claims that each customer is a separate infringer, it is clear that if Lucerne is not liable for patent infringement, none of its customers could be found liable.

---

**7.** In approving the rule that mutuality of parties is not necessary to establishment of estoppel against a litigant who had lost an earlier patent litigation, the Supreme Court disapproved "[p]ermitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out". *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). Similarly, once Skil had sued the manufacturer of the device which is the basis of this litigation, and the suit had been docketed in the Northern District of

On July 11, 1968, Skil Corporation, a corporation of Delaware and the plaintiff herein (sometimes referred to hereinafter as "Skil") filed an action against Lucerne Products, Inc., an Ohio corporation and the intervenor in the case at bar (sometimes hereinafter referred to as "Lucerne") in the Northern District of Illinois, Eastern Division, as Civil Action No. 68 C 1290, which action related *inter alia* to the Gawron Patent, U.S. Patent 3,209,228.

On June 6, 1969, Judge Hubert L. Will ordered that Civil Action 68 C 1290, in its entirety, be transferred to the U.S. District Court for the Northern District of Ohio (Eastern Division), which transfer was made by the Clerk of the Court on June 11, 1969 and the cause was subsequently docketed by the Ohio Court as No. C 69–461.

Shortly after the Order of Transfer was entered, the U.S. Supreme Court handed down its Decision in *Lear, Inc. v. Adkins*, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969).

On April 23, 1970, the Ohio District Court by Judge Ben C. Green ordered that Civil Action C 69–461 be transferred to the Northern District of Illinois to afford Judge Will a basis to reconsider the propriety of the assertion by the defendant, Lucerne, of the defense of patent invalidity as to the Gawron Patent, U.S. Patent 3,209,228.

On September 24, 1970, pursuant to a Memorandum Opinion, Judge Hubert L. Will again ordered that the entire action, Civil Action 68 C 1290 be transferred to the District Court for the Northern District of Ohio, Eastern Division.

In that Memorandum Opinion this Court, speaking through Judge Will, discussed the transfer matter at pages 5, 6, 17 and 18 and specifically stated as follows as page 17:

"As noted above in part I of this Opinion dealing with the history of this complicated litigation, this Court has previously determined that this entire action properly belongs in Ohio because of the pendency there of a related suit by Lucerne and Slater Electric Inc. against Arrowhart Inc., the latter being a counterclaim defendant in the present suit.

"Our colleague in Ohio likewise recognized the propriety of retaining the present suit there as a companion case to the suit by Lucerne and Slater Electric Inc. The Court there acknowledged that it would be more convenient for the parties and witnesses to have the action tried in Ohio rather than in Illinois and further noted that his sole motivation for returning the case to Illinois was to avoid second guessing another District Court Judge; thus he allowed this Court to rule on the Motions relating to the prior Summary Judgment. The District Court Judge acknowledged his willingness to re-accept jurisdiction over the entire litigation after this Court ruled on those motions and even went so far in support of his belief that the litigation properly belonged in Ohio as to grant certain motions of the parties conditioned upon the return of the litigation to that Court.

"We see no new elements in these proceedings which lead to a conclusion that the original decision to transfer this case to enable the litigation to proceed with all the parties in one forum was incorrect. Therefore, defendant's Motion pursuant to 28 U.S.C. 1404(a) to transfer the entire litigation back to the District Court for the Northern District of Ohio, Eastern Division, is granted."

The entire action, Civil Action 68 C 1290 was re-transferred by the Clerk on October 6, 1970.

On November 16, 1970, Skil filed Civil Action No. 70 C 2858 naming as defendants Rockwell Manufacturing Company and Wen Products, Inc., two indemnified customers of Lucerne, in the United States District Court for the Northern District of Illinois, Eastern Division. That action was assigned to Julius J. Hoffman, United States District Judge. Lucerne moved for leave to intervene under the provisions of Rule 24 F.R.C.P. and such leave was granted on February 7, 1971. That action also related to the Gawron Patent, U.S. Patent No. 3,209,228 issued September 28, 1965.

On February 29, 1972, District Judge Thomas D. Lambros in Civil Action No. C

69–461, in the United States District Court, Northern District of Ohio, Eastern Division, enjoined Skil from proceeding in connection with Civil Action 70 C 2858. In the Order of Judge Lambros, the Court stated as follows:

"The other action which Lucerne in essence seeks to enjoin Skil from proceeding is presently pending in the Northern District of Illinois, namely, *Skil Corporation v. Rockwell Manufacturing Company and Wen Products, Inc. v. Lucerne Products, Inc.*, Civil Action 70 C 2858. The issues raised there are essentially the same as those raised in the instant lawsuit. Further, Lucerne is in essence the real party in interest in that suit. The law is clear that in such a situation wherein the issues are essentially the same as well as the parties, the Court first acquiring jurisdiction should be allowed to proceed with it without interference from courts under suits subsequently filed. See *Carbide & Carbon Chemical Corp. v. United States Industrial Chemicals, Inc.*, 140 F.2d 47, 49 (4th Cir., 1944); *Milwaukee Gas Specialty Co. v. Mercoid Corp.*, 104 F.2d 589, 592 (7th Cir., 1939); *In re Georgia Power Co.*, 89 F.2d 218, 221 (5th Cir., 1937).

"Since this Court was the first one to acquire jurisdiction over the issues, inasmuch as its jurisdiction will be seriously impeded and interfered with if the other action is permitted to proceed, since irreparable injury will result to Lucerne by forcing it to engage in multiple discovery proceedings simultaneously, inasmuch as Skil will not be injured by the granting of the injunction and since the granting of the injunction will result in the vast savings of judicial time and effort, the Court grants Lucerne's request for injunctive relief."

The cause in Civil Action No. 70 C 2858 came on for trial on Monday, November 13, 1972 before this Court, but counsel for the plaintiff having represented to the Court that the plaintiff was unable to proceed by reason of the restraining order issued on February 29, 1972 by the United States District Court for the Northern District of Ohio, Eastern Division, in the case of *Skil Corporation v. Lucerne Products, Inc. et al.*, C 69–461, the Amended Complaint in Civil Action No. 70 C 2858 was dismissed without prejudice, each party to bear its own costs on November 14, 1972.

On November 13, 1972, Skil Corporation as plaintiff, filed a civil action in the United States District Court for the Northern District of Illinois, Eastern Division, against Millers Falls Company, Rockwell Manufacturing Company, Thor Power Tool Company and Wen Products, Inc., Civil Action 72 C 2854. Thor Power Tool Company was subsequently dismissed by agreement. Millers Falls Company was an indemnified customer of Lucerne and on Motion of Lucerne, Lucerne Products, Inc. was granted leave to intervene under Rule 24 F.R.C.P. on February 7, 1973.

On February 13, 1973 Judge Lambros issued a Memorandum Opinion and Order amending the February 29, 1972 Restraining Order so as to enjoin Skil, its officers, agents, employees, attorneys or any other persons acting on its behalf from proceeding in the case of *Skil Corporation v. Millers Falls Co.*, Case No. 72 C 2854 in the Northern District of Illinois.

With respect to the original Restraining Order of February 29, 1972, Skil took an appeal to the Court of Appeals for the Sixth Circuit and the Restraining Order was upheld by the Court of Appeals for the Sixth Circuit:

*Skil Corporation v. Lucerne Products, Inc.* (C.A. 6–Cause No. 72–1282, affirmed April 24, 1972)

Skil petitioned for certiorari to the United States Supreme Court, however, certiorari was denied on October 10, 1972.

With respect to the Amended Restraining Order dated February 13, 1973, Skil filed an appeal to the Court of Appeals for the Sixth Circuit, which appeal the District Court later dismissed on Skil's own Motion.

On June 28, 1973, Judge Lambros entered an Order dissolving the Amended Restraining Order dated February 13, 1973 against Skil from proceeding in this action, Civil

Action 72 C 2854. Judge Lambros further ordered Civil Action C 69–461 transferred to the Northern District of Illinois.

Lucerne has taken an appeal from such action by the Ohio District Court, which appeal was docketed July 19, 1973 in the Court of Appeals for the Sixth Circuit as Appeal No. 73–1738.

There should be no obstacle to the exercise of this Court's discretion under 28 U.S.C. § 1404 insofar as venue and jurisdiction is concerned since Lucerne is manufacturer of the accused structures and is indemnifier of the other defendants and is the real party in interest and has exercised full control of the litigation in both 70 C 2858 and 72 C 2854 with the full consent and approval of the other defendants, Millers Falls Company, Rockwell Manufacturing Company and Wen Products, Inc.

The matters placed at issue by virtue of the plaintiff's Motion, and considering the potential role of Benjamin H. Matthews as a party-defendant, if he should be added as a party, this Court pursuant to the spirit of 28 U.S.C. § 1404, for the convenience of the parties, witnesses, and in the interest of justice, would then be clearly obligated to consider the propriety of transferring this cause to the Northern District of Ohio.

Therefore, to give effect to the initial determination and transfer orders of Judge Will, and taking notice of the past actions of the Northern District of Ohio and the Sixth Circuit Court of Appeals relative to this series of litigation involving the Gawron Patent U.S. Patent No. 3,209,228, together with this Court's personal experience with two related suits, causes Nos. Civil Action 70 C 2858 and Civil Action 72 C 2854, both filed subsequent to the initial action, 68 C 1290, and considering the relative interests of each party in the Gawron patent litigation, and recognizing the propriety but consequence of granting the Motion pending in the action at bar:

It is Ordered and Adjudged

That the present action 72 C 2854 be transferred in its entirety to the United States District Court for the Northern District of Ohio, Eastern Division.

That the plaintiff's pending Motion under Rule 21 of the Federal Rules of Civil Procedure for Leave to Add Benjamin H. Matthews as a party-defendant, is referred to the Northern District of Ohio, Eastern Division, for such action as that Court might in its discretion see fit to enter.

That the Clerk of the Court is hereby ordered and directed to transfer forthwith the entire file in this case 72 C 2854, including all pleadings, motions, discovery transcripts, and related documents to the Clerk of the United States District Court for the Northern District of Ohio, Eastern Division.

Dated at Chicago, Illinois, this 31st day of July, 1973.

/s/  JULIUS J. HOFFMAN
Julius J. Hoffman, Senior Judge
United States District Court

EXHIBIT "B"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

No. C 69–461

SKIL CORPORATION, INC.,
Plaintiff,

v.

LUCERNE PRODUCTS, INC.,
Defendant.

ORDER
(Received April 17, 1975)

LAMBROS, DISTRICT JUDGE

Upon motion of the defendant and in view of the transfer to this Court of *Skil Corporation, Inc. v. Lucerne Products, Inc.,* No. C 74–121, (formerly designated Case No. 72 C 2854, Northern District of Illinois), the Court's order of June 28, 1973 transferring this case to the Northern District of Illinois is vacated. With the arrival of the Chicago litigation in this Court, and in view of the fact that the above-styled case was initiated prior to the transfered case, reten-

tion of this case seems the proper course. Pursuant to Rule 42(a), this case is consolidated with Case No. C 74–121 for all pretrial proceedings.

IT IS SO ORDERED.

/s/ THOMAS D. LAMBROS
Thomas D. Lambros
United States District Judge

DATED: 4/15/75

ADAMS, Circuit Judge (dissenting).

Two questions confront us today: first, whether, because of the doctrines of res judicata and law of the case, the Court is foreclosed from conducting an independent determination of the issue presented by the appellant; and, second, whether the Ohio district court properly assumed subject-matter jurisdiction over the lawsuit that is the foundation of the present interlocutory appeal.

This particular action was initiated by Skil Corporation (Skil) in 1972, but it is part of a complex patent infringement litigation, involving the activities of the intervenor Lucerne Products (Lucerne), that has shuffled between the Northern District of Illinois and the Northern District of Ohio for the last eight years. In July, 1973, on his own motion, Judge Hoffman ordered the case transferred from Illinois to Ohio, so that it could be consolidated with the related patent infringement cases. Skil petitioned the Court of Appeals for the Seventh Circuit for a writ of prohibition and mandamus [1] to prevent the transfer to Ohio on the ground that there was no record to show, as required by 28 U.S.C. § 1404(a) and *Hoffman v. Blaski*,[2] that the action "might have been brought" in Ohio in the first instance. Although there was extensive briefing, the Seventh Circuit denied the petition without an opinion.

**1.** Referred to hereafter as writ of mandamus.

**2.** 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

**3.** With respect to the principles of res judicata and collateral estoppel, see *Cromwell v. County of Sac.*, 94 U.S. 351, 24 L.Ed. 195 (1876); *Harrison v. Bloomfield Bldg. Indus., Inc.*, 435 F.2d

Once in Ohio, Skil moved that the cases be remanded to Illinois. Judge Lambros denied that motion, but the question of his denial of remand to Illinois was certified by him and another panel of this Court, pursuant to 28 U.S.C. § 1292(b), and is now before us on an interlocutory appeal.

A.

The arguments addressed to this Court involve what may appear, superficially, to be the same issue that was addressed to the Seventh Circuit. As a result, my colleagues would decide this troublesome case by application of the doctrines of res judicata (or, more specifically, collateral estoppel) and law of the case.

I am unable to agree with such a formulation of the problem. Underlying either doctrine, res judicata or law of the case, is the assumption that the Seventh Circuit has already decided the same issue that is now before us.[3] In my view, that fundamental condition is lacking in this situation.

Judge Hoffman's transfer of these cases to Ohio was before the Seventh Circuit, but the question was posed to the Seventh Circuit on a petition for a writ of mandamus. In contrast, the question is presented to this Court by way of an interlocutory appeal. Consequently, the legal standards which governed the decision in the Seventh Circuit are significantly different from the standards which are to control our determination.

Before this Court the issue is one of error of law: Did the Ohio district court make an error of law in denying the motion to remand these cases to Illinois, thereby upholding the transfer of venue to Ohio? The issue before the Seventh Circuit was whether there existed "exceptional circumstances amounting to a judicial 'usurpation of pow-

1192, 1195 (6th Cir. 1970); 1B J. Moore, Federal Practice ¶ ¶ 0.405[3], 0.443[1–2] (2d ed. 1974). With respect to the principles of law of the case, see *Petition of United States Steel Corp.*, 479 F.2d 489, 493–94 (6th Cir. 1973), *cert. denied*, 414 U.S. 859, 94 S.Ct. 71, 38 L.Ed.2d 110 (1973); 1B J. Moore, Federal Practice ¶ 0.404[1] (2d ed. 1974).

er'" that would justify the invocation of such an "extraordinary remedy" as a writ of mandamus.[4] As the Supreme Court has recently reiterated, "The remedy of mandamus, is a drastic one, to be invoked only in extraordinary situations."[5] It is not a substitute for an interlocutory appeal,[6] but rather a tool "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so."[7]

The majority decision is constructed upon the proposition that when the Seventh Circuit denied the petition for a writ of mandamus, it necessarily reached the merits of the transfer-of-venue question and determined that the district to which the action had been transferred was one in which it could have been brought originally. Thus, according to the majority, mandamus would have issued if the transferee district had not been a proper one for venue, and under that view, an incorrect transfer by the Illinois district court would have amounted to a usurpation of judicial power. This reasoning does not, however, withstand close analysis.

It has not been suggested that Judge Hoffman exceeded the bounds of his judicial authority in transferring the law suit. No one disputes that he had an in personam and an in rem base for jurisdiction. Such bases existed regardless of whether the transfer was properly granted. The statutory requirement of section 1404(a) concerns the jurisdiction of the court to which the action is transferred and not, as the majority asserts, the jurisdiction of the court ordering the transfer. Therefore, if Judge Hoffman transferred the case to a district in which there was no venue as to one of the parties, he committed an error of law—but he did not exceed his jurisdiction.[8] To hold otherwise would be tantamount to ruling that mandamus is available whenever a party claims that a case was transferred to a district other than one "where it might have been brought."[9] Such a result would conflict with established principles regarding the writ of mandamus, since the writ should be available only in "extraordinary situations."[10] In addition, it would make many, perhaps most, transfers under

4. *United States v. Will*, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), *citing DeBeers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). *See Butterick v. Will*, 316 F.2d 111 (7th Cir. 1963).

5. *Kerr v. United States District Court*, —— U.S. ——, ——, 96 S.Ct. 2119, 2124, 48 L.Ed.2d 725 (1976).

6. *United States v. Will*, 389 U.S. at 97, 88 S.Ct. 269; *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 27–30, 68 S.Ct. 938, 87 L.Ed. 1185 (1943); *American Constr. Co. v. Jacksonville, Tampa & Key West Ry. Co.*, 148 U.S. 372, 379, 13 S.Ct. 758, 37 L.Ed. 486 (1893); *Beneke v. Weick*, 275 F.2d 38, 39 (6th Cir. 1960); *Korer v. Hoffman*, 212 F.2d 211, 215 (7th Cir. 1954).

7. *Roche*, 319 U.S. at 26, 63 S.Ct. at 941, *quoted in United States v. Will*, 389 U.S. at 95, 88 S.Ct. 269.

8. This is so because the judge of the court where the suit was originally brought would clearly have power, which is the threshold issue on mandamus, to consider and decide a question of transfer of venue. Whether that power was exercised without error in the interpretation of section 1404(a) is quite another matter. *See A. Olinick & Sons v. Dempster*

*Bros., Inc.*, 365 F.2d 439, 445 (2d Cir. 1966); *Chicago, Rock Island & Pac. RR Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955); *Magnetic Eng'ring & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 869–70 (2d Cir. 1950).

On the other hand, the judge of the transferee district might be acting outside his power in retaining a case where it is an open question whether the suit originally could have been brought in his court, as required by section 1404(a). Hence, mandamus may issue more readily with respect to the decision of a transferee judge to accept a case than with respect to the decision of the judge in the original jurisdiction to transfer the case. *Compare Ackert v. Pelt Bryan*, 299 F.2d 65, 68 (2d Cir. 1962) *with Blaski v. Hoffman*, 260 F.2d 317 (7th Cir. 1958). *But see, e. g., Relf v. Gasch*, 167 U.S.App.D.C. 230, 511 F.2d 804 (1975); *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970), *cert. denied* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Behimer v. Sullivan*, 261 F.2d 467 (7th Cir. 1958), *aff'd sub nom. Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

9. 28 U.S.C. § 1404(a).

10. *Kerr, supra*, at ——, 96 S.Ct. at 2124.

section 1404(a) subject to mandamus, a result which surely should be avoided.

Necessarily implicit in the majority's reasoning are two assumptions, and in my view the validity of either one is doubtful. The first assumption is that the Seventh Circuit has adopted a standard of review which requires a consideration of the merits where the appellate court denies a motion for mandamus in a transfer-of-venue case. The second is that the Seventh Circuit in fact employed such a standard in denying Skil's petition for mandamus.

It is true that the Seventh Circuit has occasionally reached the merits in deciding whether to issue a writ of mandamus in transfer-of-venue situations.[11] The more common practice of that court, however, is to rule on the mandamus issue without reaching the merits.[12] As a general matter, the Seventh Circuit will grant mandamus in this type of situation only if the district judge abused his discretion with regard to the transfer question.[13] The decision in *B. Heller & Co. v. Perry*[14] exemplifies that approach. Petitioners there sought expungement of a district court transfer order issued under the authority of section 1404(a). In dismissing the petitions, the Seventh Circuit held that the district court's decision to transfer "should not be

set aside unless there is apparent an abuse of discretion."[15]

It must also be remembered that the summary denial of mandamus by the Seventh Circuit in this case came at a time when what the rule appeared to be in that circuit was summarized by the following statement from *Sypert v. Miner*:[16]

[T]o warrant action by our Court in passing on [a petition for mandamus in a transfer-of-venue context], something more must be shown than an erroneous decision by the district court. We emphasiz[e] that an abuse of discretion must clearly appear. Mandamus is a drastic and extraordinary remedy and petitions therefor hereafter filed in this Court which, in fact, involve only an erroneous decision will, in all likelihood, be summarily denied.

Thus, it would appear that while it is conceivable that the Seventh Circuit may have reached the merits of the transfer question, it is far more likely that it followed the precept it had adumbrated in *Sypert v. Miner, supra*, determining only that Judge Hoffman did not abuse his discretion by transferring the case to Ohio, and did not reach the question whether the place of transfer was a correct one. But whatever the court *may* have decided, we are not in a position to know what it *did* decide by its brief denial.[17] In view of the

---

11. The most pertinent instance is, of course, *Behimer v. Sullivan*, 261 F.2d 467 (7th Cir. 1958), aff'd sub nom. *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), where the Seventh Circuit issued a writ of mandamus on the ground that the Illinois district court lacked the power to transfer the case to a Utah district court, since the latter district was not one where the suit might have been brought originally. Another example is *Dairy Industries Supply Ass'n v. LaBuy*, 207 F.2d 554 (7th Cir. 1953).

12. *Chemetron Corp. v. Perry*, 295 F.2d 703 (7th Cir. 1961).

13. *B. Heller & Co. v. Perry*, 201 F.2d 525, 527 (7th Cir. 1953); *Butterick Company v. Will*, 316 F.2d 111, 113 (7th Cir. 1963).

14. 201 F.2d 525 (7th Cir. 1953).

15. *Id.* at 527. In refining the abuse-of-discretion test, the Seventh Circuit has more recently

adopted a standard of clear error. *See, e. g., General Portland Cement Co. v. Perry*, 204 F.2d 316, 319 (7th Cir. 1953).

16. 266 F.2d 196, 199 (7th Cir.), *cert. denied*, 361 U.S. 832, 80 S.Ct. 82, 4 L.Ed.2d 74 (1959).

17. The Seventh Circuit's order stated as follows:

"On consideration of the plaintiff's emergency petition for writ of prohibition and mandamus, memorandum in support thereof, and supplemental appendix filed August 2, 1973 and of joint answer of respondents filed August 22, 1973, It Is ordered that said petition be, and the same is hereby, Denied."

The majority seeks to infer from this language that the court addressed the merits of the transfer. This language would appear to provide a weak foundation for such a conclusion.

Seventh Circuit cases, which suggest that it would be inappropriate for the court to rule on the merits of the transfer, it is improper to assume—as the majority does here—that the merits were reached.

Two decisions based upon the same facts, but made according to different standards of adjudication, cannot without more be regarded as decisions of identical issues.[18] Accordingly, our judgment on interlocutory appeal and that of the Seventh Circuit on a petition for mandamus are not adjudications of identical issues. The necessary prerequisite for the application of the doctrines of res judicata and law of the case being wanting, I do not believe that this Court may be bound on the present appeal by the prior decision of the Seventh Circuit when it denied a writ of mandamus.[19]

### B.

If, as I believe, there has not been a prior binding determination of the transferability issue now pressed by the appellant, it is necessary for us to consider the basis in the record for establishing venue in the Northern District of Ohio.

Judge Weick has related the complicated background of this "chaotic" case with admirable clarity. The critical fact is that, since Judge Hoffman transferred these

cases sua sponte and not at the request of the defendants, there is no record to demonstrate that Skil could have brought this suit originally in Ohio. Yet, under § 1404(a), as interpreted in *Hoffman v. Blaski*, such a showing is an essential predicate for transfer. What is important to our current inquiry is the capacity of the plaintiff to have "brought" the suit in the transferee district in the first instance. Absent this necessary element, the denial of Skil's motion to remand the cause to Illinois would appear unwarranted, unless *Hoffman v. Blaski* is distinguishable.

The defendants attempt to differentiate *Hoffman v. Blaski* by drawing an analogy between the instant case and *Continental Grain Co. v. Barge FBL–585*, where a transfer was permitted although jurisdiction over the barge could not have been obtained in the transferee forum.[20] *Continental Grain* hinged on the fact that although there were suits against different defendants, there was but one real party in interest. The plaintiff had brought suit *in rem* against the barge and *in personam* against the owners of the barge; any claim secured against the barge would, of course, redound to the detriment of the barge owners. The case before this Court involves three defendants in addition to Lucerne, but Lu-

---

**18.** *See United States v. National Ass'n of Real Estate Bds.*, 339 U.S. 485, 492–94, 70 S.Ct. 711, 94 L.Ed. 1007 (1950); *Helvering v. Mitchell*, 303 U.S. 391, 397, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

**19.** Even if the law-of-the-case doctrine applied, the rule is not so inflexible that a prior decision must be followed rigidly even at the risk of grave injustice. *See Petition of United States Steel Corp.*, 479 F.2d at 494. Here, what I regard as a real possibility that the final order in this litigation will be subject to ultimate reversal on the ground that proper venue did not lie in the Northern District of Ohio would be a persuasive ground to deviate even from a clear decision by the Court of Appeals for the Seventh Circuit that the case has been transferred without error. Though it may inconvenience the parties, and vex the Court, to delay further this lengthy litigation by requiring a remand to the Northern District of Illinois, it may prove even more frustrating and time-consuming in the long run to have a costly and prolonged trial aborted on appeal because of

jurisdictional error. *See Hoffman v. Blaski*, 363 U.S. at 334, n. 9, 80 S.Ct. 1084. *But see* 1B J. Moore, Federal Practice ¶ 0.404[8] (2d ed. 1974).

**20.** 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). In *Continental Grain*, the controversy arose from a shipping mishap in Memphis, Tennessee. The barge owners brought suit against the grain company in a Tennessee state court but that action was later removed to the federal district court in Memphis. Jurisdiction with respect to the barge lines could have been had in either Memphis or New Orleans, but the barge itself having been taken to New Orleans, Continental Grain filed its subsequent federal suit, against both the barge *in rem* and the owners *in personam*, in New Orleans. When the barge line sought to transfer the *Continental Grain* case to Memphis, which was the more convenient forum, the grain company resisted the move on the ground that it could not have acquired *in rem* jurisdiction, in Memphis, the barge being in New Orleans.

cerne has agreed to indemnify the other parties. Consequently, Lucerne is presented by the defendants as the only real party in interest and, in the defendants' view, the principle underlying *Continental Grain* applies as well to the present case.

The disregard of the limitations on venue imposed by the *in rem* proceeding in *Continental Grain* was, however, founded on the fictitious nature of the *in rem* law suit. There, *in rem* jurisdiction depended upon the legal fiction that the barge had an independent personality. Hence, suit could be brought against the barge even where its owner could not be reached. It was possible in *Continental Grain* to ignore this legal fiction because it did not serve any legitimate purpose for the plaintiff in that case; it had not been necessary to employ the legal fiction in order to bring suit, since *in personam* jurisdiction over the owners of the barge had been obtained.

Here, the defendants are quite different from Barge FBL–585, since each has a real and independent legal personality. Were it not for a private agreement to indemnify, each defendant could be sued without immediately touching the interest of Lucerne. The claims against each defendant manufacturer are distinct from the claims against Lucerne, although they may arise from the same factual configuration.[21] In addition, it is somewhat misleading to regard Lucerne as the only real party in interest: jurisdiction over each of the defendant manufacturers is necessary if Skil is to obtain an injunction against the alleged patent infringements—the very relief that Skil is seeking. Moreover, should Lucerne prove unable to indemnify the manufacturers, Skil will want a monetary judgment against each of them in order to recover its damages fully.

The opinion of the Supreme Court in *Van Dusen v. Barrack*[22] should caution us against reading *Hoffman v. Blaski* too restrictively. Nonetheless, the determinative aspect of the *Continental Grain* case was existence of identical suits, one of which was based on a legal fiction that hindered the transfer of the litigation to a convenient forum, but served no functional purpose. The roles of Miller Falls, Rockwell, and Wen, the defendant manufacturers in this case, are not fictitious, and the presence of these parties is necessary to achieve the legitimate objects of a suit brought by Skil.

Consequently, I believe that the principle of *Continental Grain* does not apply in the present situation, and that the Court should adhere to the interpretation of section 1404(a) set forth in *Hoffman v. Blaski.* Under such interpretation, it is necessary for the district court to determine whether this is an action that could have been brought in the Northern District of Ohio.

### C.

It is disturbing when a lawsuit degenerates into maneuvering over the appropriate forum; it is particularly troubling here where the litigation has worn on for eight years without coming to a trial on the merits. But a court cannot act beyond its powers, and the authority of the Ohio district court to assume jurisdiction over this action is not apparent on the record before us. I would remand the case to that court for proceedings which would establish the basis of jurisdiction or, if there is no basis, for remand of the suit to Illinois. Further, I would suggest that the trial court expedite the matter and admonish the parties to cooperate fully in such efforts to complete this litigation as promptly as possible.

---

21. *See Ferri v. United Aircraft Corp.*, 357 F.Supp. 814, 817 (D.Conn.1973).

22. 376 U.S. 612, 616–24, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).